IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| CAROLYN GRAVES as Administrator of the Estate of Willie Maurice Jones, | |
| Plaintiff, | No. C10-2014 |
| vs. | RULING ON MOTIONS *IN LIMINE* |
| CITY OF WATERLOO, IOWA, and ALBERT BOVY, in his individual and official capacities, | |
| Defendants. | |

On the 2nd day of September 2011, this matter came on for a telephonic hearing on the Motion *in limine* (docket number 26) filed by the Plaintiff on August 19, 2011 and the Motion *in limine* (docket number 30) filed by the Defendants on the same date. Plaintiff Carolyn Graves, acting as Administrator of the Estate of Willie Maurice Jones, was represented by her attorney, Thomas P. Frerichs. Defendants City of Waterloo and Albert Bovy were represented by their attorney, Timothy C. Boller.

### PLAINTIFF'S MOTION *IN LIMINE*

In her motion *in limine*, Graves asks that the Court prohibit any evidence or argument regarding the past criminal convictions of Plaintiff's decedent, Willie Maurice Jones, or any reference to his filing for bankruptcy protection. The Court will address each of the issues separately:

## 1. Past Criminal Convictions

First, Graves asks that Defendants be prohibited from referring to Jones' past criminal convictions. According to Graves' answer to Interrogatory No. 6, Jones has four prior criminal convictions: "robbery/theft" in Black Hawk County in the "[m]id 70's"; second degree murder in Scott County in 1980; interference with official acts in Black Hawk County in 1998; and operating while intoxicated in Black Hawk County in 2000.[1] Defendants concede that the prior convictions are not admissible for impeachment purposes pursuant to FEDERAL RULE OF EVIDENCE 609. Defendants argue, however, that Jones' prior criminal convictions "are relevant to Plaintiff's claims for emotional distress damages and intentional infliction of emotional distress."

Graves claims that Jones suffered emotional distress as a result of his arrest on February 21, 2008, and subsequent prosecution. To recover on her claim of tortious infliction of severe emotional distress, Graves must prove that as a result of Defendant Bovy's outrageous conduct, Jones suffered "severe or extreme emotional distress." Graves apparently claims that Jones' emotional distress flows, in part, from damage to his reputation. In his answer to Interrogatory No. 11, Jones states that "I worry about people looking at me and my family in a different way when they found out about my charges or read about it in the newspaper."[2] In his deposition, Jones testified that he doesn't go anywhere with his mother because "I don't want to be seen with her, because I don't want no dirt to come down on her."[3] Graves also claims that Jones developed an alcohol problem as a result of this incident. In his answer to Interrogatory No. 11, Jones stated

---

[1] *See* Plaintiff's Answer to Interrogatory No. 6 (docket number 36-2 at 1).

[2] *See* Plaintiff's Answer to Interrogatory No. 11 (docket number 36-2 at 2).

[3] *See* Plaintiff's Deposition at 174 (docket number 36-3 at 22).

that "I have developed alcoholism as a result of this incident."[4]   Similarly, in his deposition, Jones denied having an alcohol problem prior to this incident.[5]

Defendants argue that Jones' prior criminal record is relevant to the issue of whether he sustained emotional distress as a result of this incident and, particularly, whether he suffered severe or extreme emotional distress as a result of this incident, as required by his state common-law claim.  Defendants assert that "[a] reasonable juror could conclude that Mr. Jones' alleged emotional problems were not caused by the subject incident since any shame stemming from being accused of possession and selling marijuana, could not conceivably tarnish his reputation any further than his prior murder conviction."[6]  Defendants also suggest that Jones' prior conviction for operating while intoxicated suggests that his alcohol problems were not causally related to this incident.  According to Defendants, Jones' prior conviction for interference with official acts rebuts his claim that "he is in constant fear of the police and that he is afraid the police authorities will retaliate against him."[7]

In her reply brief, Graves asserts that "[t]he Defendants' theory of admissibility rests on a false premise that once someone is convicted of a crime or spends time in prison, they are forever immune from the emotional distress caused by being framed by police officers."[8]  Graves asserts that the opposite is true.  That is, "the stronger argument can be made that a person who has experienced prison would be more traumatized by an

---

[4] *See* Plaintiff's Answer to Interrogatory No. 11 (docket number 36-2 at 3).

[5] *See* Plaintiff's Deposition at 179 (docket number 36-3 at 27).

[6] *See* Defendants' Brief (docket number 36-1) at 8.

[7] *Id.* at 9.

[8] *See* Plaintiff's Reply Brief (docket number 42) at 2.

unjust return [to prison] than a person without such experience."[9]   According to Graves, "[t]he claim that a person who has been convicted of a crime is somehow less traumatized by being framed unjustly for another crime borders on ridiculous and has no basis in fact, science, psychology, or human experience."[10]

The Court concludes that Jones' prior criminal record is relevant to the issue of damages.  Certainly a person with multiple prior convictions may nonetheless suffer emotional distress by being wrongfully charged with a crime and prosecuted.  Such an incident may affect a person differently, however, if he or she had no prior dealings with law enforcement.  It is reasonable to expect that the amount of emotional distress suffered by someone wrongfully accused of a crime is shaped, at least to a limited extent, by his or her prior experiences, including prior dealings with law enforcement.  In addition, Jones' prior convictions are relevant to his claims that he was distressed by damage to his reputation, or that the incident triggered his alcohol problem.  While the evidence is not admissible under FEDERAL RULES OF EVIDENCE 609 or 404(b), it is relevant to Graves' claims for damages.

The Court has carefully considered, as required by FEDERAL RULE OF EVIDENCE 403, whether the probative value of evidence regarding Jones' prior convictions is substantially outweighed by the danger of unfair prejudice.  Defendants agree that they will not offer any "documentation" regarding the prior convictions, nor will they introduce any evidence regarding the "facts and circumstances" underlying the convictions.  The danger of unfair prejudice may be adequately addressed by a limiting instruction.  The Court believes evidence regarding Jones' convictions may be presented to a jury for its consideration, together with all of the other relevant evidence, in determining the extent of Jones' damages, if any.  The motion will be denied.

---

[9] *Id.* at 3.

[10] *Id.*

## 2. *Bankruptcy*

In his answer to Interrogatory No. 11, Jones claimed that "I have major financial strains as a result of this arrest."[11] In his deposition, however, Jones revealed that he "filed bankruptcy about five years ago."[12] Jones testified that the bankruptcy was "somewhat" stressful for him.[13] Defendants argue that Jones' filing for bankruptcy protection "is probative on the issue of Mr. Jones' ability to live within his means and manage his finances prior to the subject incident."[14] Graves responds that the bankruptcy filing resulted primarily from medical bills and does not support Defendants' contention.

Graves asserts that the financial strains resulting from Jones' wrongful arrest and prosecution caused him emotional distress. That is, Graves has placed Jones' financial circumstances at issue. Accordingly, Defendants are permitted to offer evidence regarding any emotional distress caused by Jones' financial situation which was unrelated to this incident. It does not necessarily follow, however, that evidence regarding the filing for bankruptcy protection is admissible. The Court notes that "filing for bankruptcy" may carry a negative connotation. Pursuant to FEDERAL RULE OF EVIDENCE 403, the Court concludes that Defendants should be prohibited from offering evidence that Jones sought bankruptcy protection. Defendants may offer evidence, however, regarding Jones' financial problems and the extent to which those may have contributed to his emotional distress. The motion will be granted.

## DEFENDANTS' MOTION *IN LIMINE*

Defendants' motion *in limine* is in four parts. The Court will address each item in turn:

---

[11] *See* Plaintiff's Answer to Interrogatory No. 11 (docket number 36-2 at 2).

[12] *See* Plaintiff's Deposition (docket number 36-3 at 54).

[13] *Id.* at 55.

[14] *See* Defendants' Brief (docket number 36-1 at 17).

### 1. *Prior Acquittal By a Jury*

As a result of this incident, Jones was charged with possession of marijuana. A jury found Jones not guilty. According to Defendants' brief, the court subsequently dismissed all charges against Jones, including the accommodation offense of possession of marijuana with intent to sell. Defendants ask that the jury not be told that Jones was found not guilty.

Defendants acknowledge that the evidence in the instant action will include testimony that Jones was charged and tried as a result of this incident. Defendants also recognize that in order to prove her claim for malicious prosecution, Graves must prove that the criminal action ended favorably for Jones. According to Defendants' motion, however, it "will stipulate prior to trial that this element of the Plaintiff's claim has been satisfied," and suggests that the jury "can be instructed at trial that the Plaintiff has satisfied the unsuccessful prosecution element of her malicious prosecution claim."[15] That is, while Defendants agree that the jury can be instructed that Graves "has satisfied the unsuccessful prosecution element," they object to evidence that Jones was acquitted by a jury. Since the jury in the instant action will be told that the underlying criminal case proceeded to a jury, the Court has some difficulty in understanding the fine distinction drawn by Defendants in this regard. Moreover, as noted by Graves, if the jury in this case is simply told that the underlying prosecution was "unsuccessful," it may speculate that Jones was acquitted on a "technicality."

The Court recognizes that an acquittal by the criminal jury does not mean that it concluded that evidence was planted on Jones. It would be improper for the jury in the instant action to make that assumption. The Court concludes, however, that this issue may be addressed by a limiting instruction. The motion will be denied.

### 2. *Expert Testimony By Ron Knapp*

Graves has identified Ron Knapp to testify as an expert witness. If permitted to do so, Knapp will testify that light appearing in one frame of a video depicting the incident

---

[15] *See* Defendants' Motion *in limine* (docket number 30) at 2.

represents a reflection from an object. According to his deposition, Knapp will not testify that the object was "falling," nor will he attempt to identify the object. Defendants assert in their motion *in limine* that Knapp is not qualified to render an expert opinion regarding the cause of the light seen on the video.

The admissibility of expert testimony is governed by FEDERAL RULES OF EVIDENCE 104(a) and 702, as interpreted by the courts. Rule 104(a) states that "[P]reliminary questions concerning the qualifications of a person to be a witness . . . shall be determined by the court." Regarding expert testimony, Rule 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

FED. R. EVID. 702. When determining whether an expert may testify, "the trial judge must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592 (1993). This examination applies not only to "scientific knowledge," but also to technical and specialized knowledge. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). In other words, "trial courts must serve as gatekeepers to insure that proffered expert testimony is both relevant and reliable. *Wagner v. Hesston Corp.*, 450 F.3d 756, 758 (8th Cir. 2006) (citations omitted). *See also Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.*, 254 F.3d 706, 715 (8th Cir. 2001) ("it is the responsibility of the trial judge to determine whether a particular expert has specialized knowledge to assist jurors in deciding the specific issues in the case"). The proponent of expert

testimony must prove that the testimony is reliable and relevant by a preponderance of the evidence. *Daubert*, 509 U.S. at 592, n.10.

With these general principles in mind, the Court turns to the proposed testimony in this case. Ron Knapp has been self-employed in the video recording business for approximately 20 years. Initially, Knapp worked briefly as a "grip" for a video production company, and then borrowed a friend's video recorder to "shoot weddings." After a few years, Knapp transitioned to doing corporate and industrial work, including television commercials. Currently, about 90% of his work consists of shooting video for ad agencies. Knapp earned a GED, and has no formal training in video production or video analysis.

In the past, Knapp has been contacted by law enforcement authorities, casinos, a bank, and attorneys to "capture frames" from a video. Here, Knapp was contacted by Plaintiff's counsel and asked to look for a reflection in the video and then give "my opinion on what that might be." Knapp conceded in his deposition that this is the first case "in which you've actually been asked to review a video and then give opinions about what's shown in the video."

In his deposition, Knapp was asked by Graves' attorney whether the light seen on the single frame of the video could be characterized as "noise or compression anomalies created by low light." Knapp responded that "I don't think it's possible to determine whether or not it is an anomaly or not," but opined that it "is more likely to be a reflection than an anomaly." When pressed by Defendants' attorney regarding the basis for that opinion, Knapp responded:

> From shooting, editing, and producing video for 25 years and
> looking at literally hundreds of thousands of hours of video
> and not necessarily being a technical person, just from what
> I've seen and what I see in this video, my opinion is that that
> reflection is more likely to be a reflection of an object.

*See* Deposition of Ronald Knapp, 72:4-10 (docket number 30-4 at 18).[16]

While Knapp is an experienced videographer, editor, and producer of videos, he has no training, experience, or expertise in analyzing aberrations found in a video to determine whether they are a noise or compression anomaly, a reflection, or have some other origin. Knapp did not conduct any tests or other investigation to determine the source of the light seen on the single frame of the video. Rather, Knapp simply reached his conclusion based on years of watching video. Simply watching lots of videotape does not make one an expert in video analysis. *See Holloway v. Ameristar Cassino St. Charles, Inc.*, 2009 WL 5169535 (E.D. Mo. Dec. 18, 2009) at *6 (finding that a witness with over 30 years in the audio-visual field, but with no formal training in video editing or recording, was not qualified to testify as an expert on the issue of whether a tape had been manipulated or edited); *United States v. Jones*, 77 F.3d 491 (table), 1996 WL 68236 (9th Cir. Feb. 16, 1996) (finding an audio engineer with professional experience in recording and editing music, but with no formal training in forensic tape analysis, was not qualified to testify as an expert that one of the surveillance tapes had been edited); *United States v. Welch*, 945 F.2d 1378 (7th Cir. 1991) (finding that the chief audio production engineer with Wisconsin Public Radio lacked sufficient training or experience in forensic tape analysis to testify as an expert witness regarding possible editing of a tape).

There are persons who qualify, through training and experience, as experts in video analysis. *See, e.g.*, *United States v. Seifert*, 445 F.3d 1043 (8th Cir. 2006); *United States v. Navarro-Camacho*, 186 F.3d 701 (6th Cir. 1999). However, Knapp is not one of them. There is no evidence that Knapp received any training in what may cause aberrations in a video. Knapp admitted he has no experience in analyzing video tapes to determine the source of aberrations. Moreover, there is no evidence that Knapp conducted any tests or

---

[16] The Court notes parenthetically that to look at "literally hundreds of thousands of hours" of video in 25 years, it would be necessary to view nearly 22 hours of video 365 days per year.

engaged in any other analysis in reaching his conclusion that the light is more likely a reflection than an anomaly.  Knapp may qualify as an expert in some aspects of video production, but he does not qualify as an expert in the type of forensic analysis required here.  The Court concludes that Graves has not met her burden of establishing that Knapp is qualified to testify as an expert in this regard.  The motion will be granted.

### 3. Insurance

Defendants ask that Graves be prohibited from offering any evidence or argument regarding the fact that "[t]he City of Waterloo has liability insurance coverage which is available to indemnify Defendants if a judgment is rendered against them."  Graves does not resist this part of the motion.  The motion will be granted.

### 4. References to Motion in Limine

Finally, Defendants ask that Graves be prohibited from making any reference to the fact that a motion *in limine* was presented and/or ruled upon by the Court.  Graves does not resist.  The motion will be granted.

### ORDER

IT IS THEREFORE ORDERED that the Motion *in Limine* (docket number 26) filed by the Plaintiff and the Motion *in Limine* (docket number 30) filed by the Defendants are hereby **GRANTED** in part and **DENIED** in part, as set forth above.

DATED this _8th_ day of September, 2011.

_____
JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA