IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| CAROLYN GRAVES as Administrator of the Estate of Willie Maurice Jones,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF WATERLOO, IOWA, and ALBERT BOVY, in his individual and official capacities,<br><br>Defendants. | No. C10-2014<br><br>ORDER DENYING MOTION FOR NEW TRIAL |

## TABLE OF CONTENTS

I.   INTRODUCTION .................................................. 1

II.  BACKGROUND FACTS AND PROCEEDINGS ........................ 2
     A.   Procedural History ........................................ 2
     B.   Motion in Limine .......................................... 2
     C.   Trial ..................................................... 4

III. DISCUSSION ..................................................... 5
     A.   Motion for Expanded Findings of Fact and Conclusions of Law .... 5
     B.   Motion for New Trial ...................................... 6
          1.   Parties' Claims ...................................... 7
          2.   Analysis ............................................. 8
     C.   Summary ................................................. 13

IV.  ORDER ......................................................... 14

## I. INTRODUCTION

This matter comes before the Court on the Motion for New Trial and for Expanded for Expanded [*sic*] Findings of Fact and Conclusions of Law Pursuant to F.R.CIV.P. 52 and 59 (docket number 59) filed by the Plaintiff on October 10, 2011; the Resistance (docket number 60) filed by the Defendants on October 21, 2011; and the Reply (docket

number 61) filed by the Plaintiff on October 28, 2011. Pursuant to Local Rule 7.c, the motion will be decided without oral argument.

## II. BACKGROUND FACTS AND PROCEEDINGS

### A. Procedural History

On February 19, 2010, Willie Maurice Jones filed a complaint against the City of Waterloo, Iowa, and Police Officer Albert Bovy, claiming that Bovy fabricated evidence against him at a traffic stop on February 21, 2008, resulting in Jones being wrongfully prosecuted on a drug charge. Jones asserted a claim for a violation of his Constitutional rights, pursuant to 42 U.S.C. § 1983, and state claims for false arrest, malicious prosecution, and intentional infliction of emotional distress.

Willie Maurice Jones died on September 20, 2010. Carolyn Graves, acting as administrator of his estate, was substituted as Plaintiff. The parties consented to trial by a United States magistrate judge, and the case was referred by Chief Judge Reade to the undersigned magistrate judge on February 10, 2011. Trial began on September 21, 2011. On September 27, 2011, the jury returned a verdict for Defendants.

### B. Motion in Limine

On August 19, 2011, Plaintiff timely filed a motion *in limine*. Among other things, Plaintiff asked that the Court prohibit Defendants from offering any evidence regarding Jones' past criminal convictions. Jones had four prior convictions: robbery/theft in the mid-70s, second degree murder in 1980, interference with official acts in 1998, and operating while intoxicated in 2000. Defendants conceded that the prior convictions were not admissible for impeachment purposes pursuant to FEDERAL RULE OF EVIDENCE 609. Defendants argued, however, that evidence of Jones' prior convictions was relevant to Plaintiff's claims for damages.

Plaintiff claimed that Jones suffered severe or extreme emotional distress as a result of his arrest on February 21, 2008, and subsequent prosecution.[1] Plaintiff also claimed

---

[1] Plaintiff's claim of intentional infliction of emotional distress required proof of
(continued...)

2

that Jones suffered emotional distress due to damage to his reputation. In his answer to Interrogatory No. 11, Jones stated that "I worry about people looking at me and my family in a different way when they found out about my charges or read about it in the newspaper." In his deposition, Jones testified that he didn't go anywhere with his mother because "I don't want to be seen with her, because I don't want no dirt to come down on her." Furthermore, Plaintiff claimed that Jones developed an alcohol problem as a result of this incident. In his answer to Interrogatory No. 11, Jones stated that "I have developed alcoholism as a result of this incident." Similarly, in his deposition, Jones denied having an alcohol problem prior to this incident.

Defendants argued that Jones' prior criminal record was relevant to the issue of whether he sustained severe or extreme emotional distress as a result of this incident, as required by his state common-law claim. Defendants also argued that "any shame stemming from being accused of possession and selling marijuana, could not conceivably tarnish his reputation any further than his prior murder conviction." Furthermore, Defendants argued that Jones' prior drunk driving conviction suggested that his alcohol problems were not causally related to this incident.

In denying Plaintiff's motion *in limine*, the Court concluded that Jones' prior criminal record was relevant to the issue of damages.

> Certainly a person with multiple prior convictions may nonetheless suffer emotional distress by being wrongfully charged with a crime and prosecuted. Such an incident may affect a person differently, however, if he or she had no prior dealings with law enforcement. It is reasonable to expect that the amount of emotional distress suffered by someone wrongfully accused of a crime is shaped, at least to a limited extent, by his or her prior experiences, including prior dealings with law enforcement. In addition, Jones' prior convictions are relevant to his claims that he was distressed by

---

[1](...continued)
severe or extreme emotional distress. *See Van Baale v. City of Des Moines*, 550 N.W.2d 153, 156 (Iowa 1996).

3

damage to his reputation, or that the incident triggered his alcohol problem.

*See* Ruling on Motions *in Limine* (docket number 44) at 4.

The Court carefully considered whether the probative value of evidence regarding Jones' prior convictions was substantially outweighed by the danger of unfair prejudice. The Court concluded that these concerns were adequately addressed by limiting the evidence concerning the prior convictions, and by giving the jury an instruction limiting the purpose for which the evidence could be used. Plaintiff's motion *in limine* was denied.

### C. Trial

The case proceeded to trial to a jury on September 21, 2011. Portions of Jones' pretrial deposition were read into evidence. The jury was instructed that evidence of Jones' prior convictions could be considered "for the limited purpose of determining Jones' damages" and could not be considered for any other purpose.[2] Jones testified that he pleaded guilty to robbery or theft in the 70s, was convicted of second-degree murder in the latter 70s or early 80s and spent eight years in prison, was convicted of interference with official acts in 1998, and pleaded guilty to driving while drunk in 2000. No other evidence was introduced regarding Jones' convictions.

Jones also testified in his pretrial deposition – portions of which were read to the jury due to Jones' death – regarding his emotional distress, shame, and drinking. Plaintiff also offered testimony on these subjects by Carolyn Graves (Jones' sister), Earline Jones (Jones' mother), and Mike Santiago (Jones' co-worker).[3]

The case was fully submitted and the jury retired to deliberate at 3:57 p.m. on September 26, 2011. The jury later adjourned for the evening without reaching a verdict. The jury reconvened at 9:00 a.m. on the following morning, and returned a verdict into

---

[2] A limiting instruction was also included in the final instructions submitted to the jury. *See* Final Instruction No. 11A (docket number 54 at 13).

[3] In their briefs, the parties disagree somewhat regarding the extent to which Defendants' counsel cross-examined Plaintiff's witnesses on the issue of damages, and the Court has not been provided with a transcript.

open court at 11:37 a.m. The jury found that Plaintiff had failed to prove that Bovy fabricated evidence of criminal conduct on the part of Jones by placing a bag containing marijuana outside the passenger side of Jones' vehicle. Pursuant to the jury's verdict, judgment was entered dismissing the action.

On October 10, 2011, Plaintiff filed the instant motion for new trial.

### III. DISCUSSION

In her instant motion, Defendant asks that the Court "reconsider" its ruling on the motion *in limine*, and order a new trial. In support of her request, Plaintiff asserts that notwithstanding their argument that Jones' prior convictions were relevant to the issue of damages, "the Defendants never introduced or challenged the Plaintiff's evidence or argument concerning damages and the extent thereof."[4] That is, Plaintiff claims that Defendants "misled the Court" regarding the probative value of the evidence.[5] Plaintiff speculates that "[h]ad the Court known that the extent or nature of Plaintiff's alleged damages would not be addressed by the Defendants at trial, the Court would have likely granted Plaintiff's Motion in Limine."[6]

Plaintiff urges the Court to "reconsider its evidentiary ruling in light of the evidence presented at trial," pursuant to FED. R. CIV. P. 52(b). In addition, Plaintiff asks that the Court grant a new trial, pursuant to FED. R. CIV. P. 59(a).

#### A. *Motion for Expanded Findings of Fact and Conclusions of Law*

The Court will first address Plaintiff's argument that the Court should "reconsider" its ruling on the motion *in limine* and enter additional "fact findings and conclusions of law" pursuant to RULE 52(b). The Court believes that Plaintiff's reliance on RULE 52(b) is misplaced.

RULE 52 states, in part, as follows:

---

[4] *See* Plaintiff's Motion for New Trial (docket number 59) at 2.

[5] *Id.*

[6] *Id.*

> On a party's motion filed no later than 28 days after the entry of judgment, the court may amend its findings – or make additional findings – and may amend the judgment accordingly. The motion may accompany a motion for a new trial under Rule 59.

FED. R. CIV. P. 52(b).

Plaintiff does not cite any case where RULE 52(b) has been applied to these procedural circumstances, and the Court has found none. RULE 52(a)(1) provides that "[i]n an action tried on the facts **without a jury** or with an advisory jury, the court must find the facts specially and state its conclusions of law separately." (emphasis added) RULE 52(b) is clearly intended to address those circumstances when, following a bench trial, a party seeks amended or additional findings. *See, e.g.*, *Sawheny v. Pioneer Hi-Bred Intern., Inc*, 93 F.3d 1401 (8th Cir. 1996). The Court has found no case where, following a jury trial, RULE 52(b) has been invoked to amend the Court's "findings" in a pretrial motion. *See also American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1361-62 (Fed. Cir. 1984) (noting that by its terms, RULE 52 applies only to actions tried without a jury, or with an advisory jury).

### *B. Motion for New Trial*

The Plaintiff's principal argument is that the Court erred in permitting Defendants to introduce evidence regarding Jones' prior convictions. Plaintiff argues this is particularly true since Defendants did not substantially contest the issue of damages at trial and, according to the argument, evidence regarding the prior convictions thus lacked probative value. Plaintiff asks that she be granted a new trial, pursuant to FED. R. CIV. P. 59(a).

"Under Rule 59, the decision to grant a new trial lies within the sound discretion of the trial court, and its decision will not be reversed on appeal absent a clear abuse of that discretion." *Howard v. Mo. Bone & Joint Ctr., Inc.*, 615 F.3d 991, 995 (8th Cir. 2010). "The key question in determining whether a new trial is warranted is whether it is necessary to prevent a miscarriage of justice." *Haigh v. Gelita USA, Inc.*, 632 F.3d

464, 471 (8th Cir. 2011). Here, Plaintiff argues that "the improperly admitted evidence that Jones was a convicted murderer could very well have been the tipping point in the jury's decision in returning a defense verdict."[7]

To receive a new trial under these circumstances, Plaintiff must first establish that the Court erred in permitting testimony regarding Jones' prior convictions. Next, Plaintiff must show that admission of the disputed evidence was not "harmless error."

> Unless justice requires otherwise, no error in admitting or excluding evidence – or any other error by the court or party – is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order. At every state of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights.

FED. R. CIV. P. 61. *See also Lovett v. Union Pacific R. Co.*, 201 F.3d 1074, 1080 (8th Cir. 2000) ("Where the district court errs in admitting evidence, we will only grant a new trial or set aside a verdict if there is clear and prejudicial abuse of discretion. . . . An abuse of discretion occurs when the error prejudicially influences the outcome.").

### 1. *Parties' Claims*

In support of her motion, Plaintiff relies heavily on the assertion that Defendants did not contest the issue of damages. In her motion, Plaintiff claims that "the Defendants never introduced or challenged the Plaintiff's evidence or argument concerning damages and the extent thereof."[8] In her brief, Plaintiff further asserts:

> At trial, Plaintiff presented several witnesses in support of her claim for damages for Jones' emotional distress. Defendants did not cross examine any of these witnesses regarding their testimony on the issue of the nature or extent of damages suffered by Mr. Jones. Other than Jones' criminal convictions, Defendants did not offer *any* evidence as to Jones' damages attributable [to this claim] or the extent of Jones' emotional distress. Not during opening statements nor during

---

[7] *See* Plaintiff's Brief (docket number 59-1) at 14.

[8] *See* Plaintiff's Motion for New Trial (docket number 59) at 2.

> final summations to the Jury did the Defendants utter a word about the relevancy of Jones' criminal convictions to Jones' damages for emotional distress. After purposely not connecting the dots between the evidence of Jones' criminal convictions and its relevancy to the issue in this case of emotional distress damages, Defendants successfully moved the Court for an Order that precluded Plaintiff's counsel from readdressing the issues of damages to account for the glaring omission in the defendants' argument.

See Plaintiff's Brief (docket number 59-1) at 5-6 (emphasis in original).

In their brief, Defendants contest Plaintiff's assertions in this regard. Defendants assert that after Mike Santiago, Jones' co-worker, testified regarding the alleged effects this incident had on Jones, he was cross-examined regarding whether Jones ever discussed the effect of his second degree murder conviction and subsequent incarceration on Jones' "shame, grief, paranoia, and alcohol problem he allegedly developed as a result of the subject arrest and prosecution."[9] Similarly, after Jones' mother, Earline Jones, testified that her son's life changed drastically after he was arrested, Defendants' counsel "inquired as to Mr. Jones' personality and mental state following his period of incarceration for the second degree murder conviction."[10] Neither party provided the Court with a transcript of the trial testimony and, therefore, the Court cannot set forth precisely the testimony in this regard.

2.  *Analysis*

When this issue was raised in Plaintiff's pretrial motion *in limine*, the Court concluded that Jones' prior convictions were relevant to his claims for damages. That remains my view. "Relevant evidence" is evidence having "any tendency" to make the existence of a material fact "more probable or less probable than it would be without the evidence." FED. R. EVID. 401. It is reasonable to believe that one who has been previously convicted of second degree murder is less likely to suffer severe or extreme

---

[9] See Defendants' Brief (docket number 60-1) at 5.

[10] *Id.* at 6.

emotional distress when charged with possession of marijuana with intent to deliver, than one who has had no prior dealings with law enforcement. This is true even if the arrest was allegedly without probable cause, and the prosecution was unwarranted. Similarly, a jury could find that a person's claim that he worries about how "people look at me and my family" after hearing about the charges, rings hollow when the person has been previously convicted of a much more serious criminal offense. Jones' deposition testimony that he didn't go anywhere with his mother because "I don't want to be seen with her, because I don't want no dirt to come down on her," may seem disingenuous in light of his prior second degree murder conviction. Finally, Jones' claim that he "developed alcoholism as a result of this incident" is potentially rebutted by evidence of his prior drunk driving conviction.

It is undisputed that Defendants' counsel limited his cross-examination on damages issues, and did not address the issue of damages in his closing argument. For whatever reason, Plaintiff's counsel only briefly addressed the issue of damages in his initial closing argument. It is sometimes the case that a plaintiff's attorney will "save" part of the argument for the rebuttal argument, when it is too late for the defendant's counsel to respond. In any event – perhaps in response to Plaintiff's limited initial argument on damages – Defendant's counsel here made a strategic decision not to argue the issue of damages in his closing argument, thereby not giving Plaintiff's counsel anything to "rebut," and foreclosing a second bite at the apple. Prior to Plaintiff's rebuttal argument, Defendants sought an order prohibiting Plaintiff's counsel from revisiting the issue of damages. Since there was no damages argument to "rebut," the motion was granted.

The fighting issue here was whether Officer Bovy fabricated evidence of criminal conduct on the part of Jones by placing a bag containing marijuana outside the passenger side of Jones' vehicle.[11] This issue was hotly contested, with conflicting evidence and

---

[11] In her brief, Plaintiff describes this as the "decisive factual issue." *See* Plaintiff's Brief (docket number 59-1) at 3. In their Brief, Defendants describe it as the "primary issue at trial." *See* Defendants' Brief (docket number 60-1) at 2.

argument offered by both sides. By contrast, Plaintiff's claim for damages was relatively straightforward. Plaintiff sought the legal expenses and fees paid by Jones in the underlying criminal case, his mental pain and suffering from the time of his arrest (February 21, 2008) to the time of his death (September 20, 2010), and punitive damages. The amount of Jones' legal expenses was uncontested, and it is not surprising that Defendants chose not to focus on the remaining claims for damages. Questioning Jones' mother, sister, and co-worker at length on this issue was unlikely to elicit favorable testimony. As set forth above, the Court believes that evidence regarding Jones' prior convictions is relevant to his claims for damages, and the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. That Defendants made a strategic decision to not focus on damages at trial does not change the Court's view in this regard.

While having no precedential effect, the Court finds the recent decision in *Cobige v. City of Chicago, Ill.*, 651 F.3d 780 (7th Cir. 2011), to be instructive. There, the plaintiff's decedent died of a heart arrhythmia while in police custody. A jury found that four police officers violated both state law and the federal Constitution by allowing Cobige to suffer untreated pain, and awarded $5 million in compensatory damages. *Id.* at 782. The Seventh Circuit Court of Appeals affirmed on the issue of liability, but reversed and remanded for a new trial on the issue of compensatory damages, finding that the trial court erred in excluding evidence which would have undermined the plaintiff's "favorable picture" of plaintiff's decedent.

"Maurice Cobige, who was 27 when his mother died, testified that she had been a friend as well as a parent, a bulwark of support and a role model throughout his life." *Id.* at 784. According to the Seventh Circuit, "[t]his testimony potentially affected not only the damages recoverable by Maurice for loss of companionship but also the damages for Cobige's loss of the enjoyment of life." *Id.* The defendants wanted to introduce evidence of Cobige's drug addiction, arrests and convictions, and imprisonment. "The excluded evidence would have undermined the favorable picture that Maurice Cobige painted of his

mother's character and would have allowed defense counsel to ask just what kind of 'role model' she could have been." *Id.*

When excluding Cobige's police record, time in prison, and drug addiction, the trial court relied on FED. R. EVID. 609 and 404(b). The Seventh Circuit noted that these rules had no bearing under these circumstances. *Id.* Instead, applying RULE 403, the Court concluded that "[t]he district judge should not have forbidden evidence that would have helped defendants counter Maurice's presentation." *Id.* at 785.

> Rule 403, which permits a judge to exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice," does not justify exclusion of this evidence. The effect that Chicago sought would not have been "unfair prejudice"; the evidence bore directly on the appropriate amount of damages. When the law makes damages depend on matters such as the emotional tie between mother and son, the defendant is entitled to show that the decedent's character flaws undermined the quality of advice and support that she could have supplied. This kind of effect is not "prejudice" at all – not unless we count as "prejudice" all evidence that undermines the other side's contentions – let alone "unfair prejudice".

*Cobige*, 651 F.3d at 785 (internal citation omitted).

Turning to the instant action, Plaintiff claims Jones suffered severe or extreme emotional distress, shame and humiliation, was reluctant to go out at night, and developed a drinking problem as a result of being charged with possession of marijuana with intent to deliver. Given the nature of Plaintiff's damage claims, Defendants are permitted to offer evidence that the shame, humiliation, or emotional distress Jones suffered by perceived damage to his reputation may be tempered by his prior convictions for more serious offenses. Similarly, Plaintiff cannot claim that Jones developed an alcohol problem as a result of this incident, without permitting Defendants to prove he was previously convicted of drunk driving.

In support of her motion for new trial, Plaintiff relies heavily on two Ninth Circuit cases: *Powell v. Levit*, 640 F.2d 239 (9th Cir. 1981), and *Simpson v. Thomas*, 528 F.3d

11

685 (9th Cir. 2008). The Court believes that Plaintiff's reliance on these cases is misplaced. In *Powell*, an action against several police officers alleging the use of excessive force, the defendants introduced impeachment evidence of Powell's 16-year-old criminal conviction and his juvenile record. The Ninth Circuit Court of Appeals found that the procedural requirements of RULE 609 were not met. 640 F.2d at 241 ("The defense did not give notice that it intended to admit Powell's sixteen-year old conviction, nor did the district court make a finding that the probative value of the evidence substantially outweighed its effect."). Finding that the error was not harmless, the Court reversed. The defendants did not claim that the evidence was relevant to the issue of damages, and there was no RULE 403 analysis.

In *Simpson*, an inmate brought an action against a corrections officer, alleging excessive force was used to remove him from his cell. The district court allowed the defendant to introduce evidence of three prior felony convictions which fell outside the ten-year time limit of RULE 609(b), because they were considered by a court in sentencing the plaintiff on a subsequent conviction. The Ninth Circuit Court of Appeals was then presented with the "first impression" legal issue of "whether prior convictions more than ten years old may be used for impeachment purposes under FEDERAL RULE OF EVIDENCE 609 if those prior convictions are used to enhance a sentence for a separate conviction that falls within the ten-year time limit of Rule 609(b)." *Id.* at 689. The Court concluded that the prior convictions "do not endure for purposes of Rule 609(b) and therefore are not admissible against the witness," unless the court determines the probative value of the evidence substantially outweighs its prejudicial effect. *Id.* The Ninth Circuit concluded that the district court erred in its application of the probative value standard.

> The district court said that it did not find that the admission of the prior convictions "would be so prejudicial as to outweigh the probative value." This summary conclusion by the district court was erroneous for three reasons. First, the language used by the district court inverts the requirement of Rule 609(b) by requiring the prejudice to outweigh the probative value. Second, the district court did not offer

> specific facts and circumstances to support its conclusion, as required by Rule 609(b). Third, the language of the Rule requires that the probative value *substantially* outweighs the prejudice. Here the district court made no such determination.

*Simpson*, 528 F.3d at 691. Finding that this failure to "properly perform the balancing test required by Rule 609(b)" was not harmless, the Ninth Circuit reversed. *Id.* at 691. Again, *Simpson* involves the proper application of RULE 609(b) to impeachment evidence, and has no relevance to RULE 403 and substantive evidence relevant to damages.

As Plaintiff here concedes, *Powell* and *Simpson* address the admission of prior convictions for impeachment purposes, pursuant to RULE 609. Evidence of older convictions is not admissible for impeachment unless "the probative value of the conviction substantially supported by specific facts and circumstances substantially outweighs its prejudicial effect." RULE 609(b). Here, Defendants concede that evidence regarding Jones' prior convictions is not admissible for impeachment purposes under RULE 609. Instead, Defendants argue, and the Court agrees, that evidence regarding Jones' prior convictions is relevant to his claims for damages. Like the Court in *Cobige*, the Court finds the proper analysis is under RULE 403, rather than 609(b). 651 F.3d at 784. RULE 403, unlike 609(b), provides that evidence offered for this purpose may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice." RULE 403. I cannot make that finding here.

### C. Summary

For the reasons set forth above, I believe that evidence regarding Jones' prior convictions is relevant to his claims for damages and, thus, has probative value. It would be fundamentally unfair to allow Jones to claim that he suffered severe or extreme emotional distress as a consequence of being charged with possession of marijuana with intent to deliver, without allowing Defendants to show that Jones has been previously charged and convicted of much more serious offenses. Similarly, Jones' claims of shame and humiliation can be viewed differently when a factfinder is told that he was previously imprisoned for second degree murder. Finally, Jones' claim that he developed an alcohol

problem as a result of this incident is belied by his prior conviction for drunk driving. The fact that Defendants apparently chose for strategic reasons to de-emphasize damages at trial does not diminish the probative value of the evidence.

Furthermore, I continue to believe that the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. As noted by the Court in *Cobige*, evidence offered to rebut a plaintiff's claims for damages cannot be considered "unfairly" prejudicial. 651 F.3d at 785. The evidence regarding Jones' prior convictions was limited. That is, Defendants did not offer any details underlying the convictions. In addition, the jury was twice instructed that the evidence could be used "for the limited purpose of determining Jones' damages" and could not be considered for any other purpose. The Court has no reason to believe the jury disregarded the Court's instructions.

In summary, the Court concludes that it did not err in permitting Defendants to offer evidence regarding Jones' prior convictions. Having concluded that admission of Jones' prior convictions was not error, the Court finds it unnecessary to address the issue of whether the alleged error was "harmless." Plaintiff is not entitled to a new trial.

## IV.   ORDER

IT IS THEREFORE ORDERED that the Motion for New Trial (docket number 59) filed by the Plaintiff on October 10, 2011 is **DENIED**.

DATED this 15th day of November, 2011.

JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA